UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

M.L.P.  PETITIONER

v.  No. 4:25-cv-170-BJB

JASON WOOSLEY, ET AL.  RESPONDENTS

\* \* \* \* \*

## OPINION & ORDER

Petitioner, a noncitizen proceeding anonymously as M.L.P., entered the United States, apparently without lawful permission, in 2014. Petition for Writ of Habeas Corpus (DN 1) ¶¶ 20, 28. Although the immigration authorities removed her, she reentered in 2015 but was detained at the border by the Department of Homeland Security. ¶ 28. The parties don't dispute that the Government then reinstated M.L.P.'s 2014 removal order. *See* Notice of Intent to Reinstate (DN 9-1); Response to Show-Cause Order (DN 9) at 2. But rather than execute that order, the Government allowed M.L.P. to remain in the country under a "supervision order," ¶ 28; *see also* Order of Supervision (DN 1-3); Agency Records (DN 1-4), seemingly because she expressed fear of returning to her home country, ¶ 29. Since then, M.L.P. has applied for asylum and statutory withholding and lived in Illinois while awaiting decisions on those requests. ¶¶ 29–30.

In 2025, however, ICE detained M.L.P. through a series of steps the parties haven't contested. M.L.P. received a call in June from ICE officers instructing her to report to the local ICE office for a "routine check-in appointment." ¶¶ 3, 34. She complied. ¶ 32. Rather than interview her regarding adherence to the supervision order, ICE detained her and later transferred her to the Grayson County Jail in Kentucky. ¶ 34. The officers did so despite her "consistently compl[ying] with conditions … of her release for the [last] 10 years." Reply to Show-Cause Order (DN 11) at 2; *see also* ¶¶ 73, 96. When officers detained her, moreover, they neither provided written notice that her supervision order had been revoked nor explained the grounds for any revocation. *Id.* Nor, on M.L.P.'s telling, did they say who decided to revoke her supervision, explain their reasons to detain her, or give her any form of notice or a hearing. ¶¶ 69, 74, 76–77, 109–11, 113. M.L.P. has now been detained for six months in Grayson County Jail at Homeland Security's behest, pending the resolution of her statutory withholding and asylum claims. ¶¶ 36, 77.

M.L.P. now asks this Court for release on a writ of habeas corpus. A federal court may order the release of persons "in custody in violation of the Constitution or

1

laws … of the United States." 28 U.S.C. § 2241. The Constitution presupposes access to habeas relief. U.S. CONST. art. I, § 9. And even before the founding, the "core" use of habeas has been securing "release" from "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Consistent with habeas's historical limitation on arbitrary government power, the writ is not limited to citizens; aliens too may use habeas to test the lawfulness of executive detention. *See, e.g.*, *Heikkila v. Barber*, 345 U.S. 229, 234–35 (1953). Indeed, the Supreme Court recently held that when an alien's "claims for relief 'necessarily imply the invalidity' of [her] confinement …, [her] claims … *must* be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). And petitioners have long used habeas to challenge, in federal court, compliance with statutes authorizing—and limiting—immigration detention. *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60 (1892); *United States v. Jung Ah Lung*, 124 U.S. 621, 626–32 (1888).

M.L.P.'s petition challenges the Government's compliance not with a statute as such, but instead with regulations implementing several immigration statutes. When "[r]egulations with the force and effect of law supplement" those statutes and "requir[e]" or "forbid" certain agency procedures, she contends, their violation amounts to the sort of legally unjustified act of detention that historically has warranted habeas relief. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954) (citations omitted)); *see, e.g.*, Petition ¶¶ 66–67, 76, 83 (relying on *Accardi* for this point). The Government's opposition doesn't resist this application of habeas relief to the violation of immigration regulations—which would be difficult, seeing as *Accardi* is itself a habeas decision. Nor, as discussed below, does it contest M.L.P.'s arguments that these regulations bind DHS, or that DHS failed to follow them.

The Government rests its detention authority on 28 U.S.C. § 1231. Response at 1, 3. But to detain an alien in her position on this basis, the Government must satisfy the conditions laid out in 8 U.S.C. § 1231(a)(6). And those conditions have been refined and codified in the regulatory procedures outlined in 8 C.F.R. § 241.4. Among other things, that regulation requires the Government to give a detained alien a "copy of any decision … to release or to detain" her, § 241.4(d); to "notif[y]" her "of the reasons for revocation of … her release," § 241.4(*l*)(1); and to "afford [her] an opportunity to respond to the reasons for revocation" in an "informal interview promptly after … her return to [Government] custody," *id.* She alleges none of that happened. ¶¶ 69, 74, 76–77, 109–11, 113. That is, when the Government released her in 2015 pending removal instead of deporting her right away, it did so under a supervision order that governs her continued presence in this country, future removal proceedings, and process in the event of its revocation. The core of M.L.P.'s regulatory argument—she makes others based on due process and statutory detention authority

2

that are unnecessary to resolve here—is therefore that DHS detained her without heed to its own earlier order and the regulations governing its enforcement.

The Government, as noted, doesn't disagree with much (if any) of this. On receiving M.L.P.'s petition, the Court ordered the Government to show cause why the writ should not be granted and indicate whether a hearing would help resolve M.L.P.'s petition. DN 6 (applying 28 U.S.C. § 2243). In response, the Government explained that although M.L.P. had an outstanding removal order and supervision order deferring removal pending her applications for asylum and withholding, Response at 2, it couldn't find a copy of any notice that the order had been revoked—or any documents memorializing the decision to revoke it and detain her, *id.* at 3. For that reason, the Government conceded, it "cannot currently show that Petitioner's order of supervision was revoked in accordance with 8 C.F.R. § 241.4(*l*)." *Id.* Perhaps for that reason, the Government stated that M.L.P.'s position involved no factual disputes warranting a hearing, and instead agreed to decision on the briefs. Joint Status Report (DN 10) at 1. In other words, the Government has waived any response to M.L.P.'s allegations that it revoked her supervision order without notice, documents, or an interview. And it makes no effort to show that her detention is consistent with agency regulations. On this record—and with these concessions—the Government hasn't shown any lawful authority to detain M.L.P. *Cf. A.M.V.V. v. Woosley, et al.*, No. 4:25-cv-118, DNs 10 at 3–4, 15, 17 (W.D. Ky.).

The only question, then, is whether this Court has the authority to order M.L.P.'s release—a jurisdictional issue the Government has raised in other cases, but declined to argue in this one.

No doubt, this case falls within the general grant of federal-question jurisdiction. *See* 28 U.S.C. § 1331. The question is instead whether Congress stripped that jurisdiction in 8 U.S.C. § 1252. That statute bars district courts from reviewing "the decision or action … to commence proceedings, adjudicate cases, or execute removal orders against any alien," § 1252(g), or take up "questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States," § 1252(b)(9).

M.L.P. isn't directly challenging a removal order or removal proceedings. (If anything, she challenges the *lack* of process.) But "arising from," the Supreme Court has noted, is a "capacious phras[e]" that might reach far enough to cover detention actions like this one. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). The Supreme Court has declined, however, to adopt that capacious reading. Giving § 1252 such an "expansive interpretation," a plurality of the Court has held, "would lead to … results" described as "staggering," such as "mak[ing] claims of prolonged detention effectively unreviewable." *Id.* For that reason, the Court has suggested—although not held—that courts should read § 1252 more narrowly. *See id.* at 294. This interpretation,

while certainly subject to linguistic critique, *see id.* at 315–23 (Thomas, J., concurring in judgment), coheres with the other longstanding canons of construction, *see, e.g.*, *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001) (applying "the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction") (citation omitted).

Does this petition implicate a decision or action to commence proceedings, or an action taken or proceeding brought to remove an alien? Those two § 1252 subsections apply only when the Government conduct in question somehow relates to "remov[ing] an alien from the United States," § 1252(b)(9). But the Government admits it has no record of why M.L.P.'s supervision was revoked and makes no effort to explain why she is now detained. Nothing at all—at least nothing that the Government points to—explains why her supervision order was revoked or why she was arrested and moved to Kentucky. To be sure, M.L.P. seemingly has a removal order and pending withholding-only proceedings. Petition ¶¶ 29–30; Response at 1–2; Reply at 2–3. But the Government doesn't argue—much less offer evidence—that her arrest was connected to either that order or those proceedings. Or even that any actor, on behalf of the Executive, actually *made* a "decision" to "execute removal" against M.L.P. § 1252(g). The response merely notes (at 3) that she "was not timely removed" back in 2015. Without any evidence suggesting that M.L.P.'s detention "aris[es] from" efforts "to remove" her, § 1252(b)(9), the Court lacks any basis on which to doubt its jurisdiction.

The only substantive basis for detention the Government identifies is 8 U.S.C. § 1231(a)(2)(A). That provision allows that the Government "shall detain [an] alien" with a final order of removal. But only under defined circumstances that don't apply here. This is not detention during the "removal period," *id.*, that is, the 90 days after a removal order becomes final, § 1231(a)(1)(A), (B). And "[i]f the alien … is not removed within the removal period," the Government may continue detention—but, again, only in certain situations. § 1231(a)(6). Otherwise it must release her on a supervision order. § 1231(a)(3). All parties agree the Government chose the latter course here. Having done so, the Government cannot turn back the clock and alter the 2015 decision to release under supervision by pointing to § 1231(a)(6). To revoke the supervision order, it must instead comply with the applicable statutory and regulatory rules. That, the Government concedes, it cannot show.

## ORDER

Because the Government has not identified any lawful basis to detain M.L.P—and concedes that it cannot show compliance with DHS regulations in detaining her—the Court grants the petition for habeas corpus (DN 1) and directs the Respondents to release Petitioner from custody.

Benjamin Beaton, District Judge
United States District Court

December 23, 2025